# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00147-CR

**Julius J. Manno, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY,
### NO. C-1-CR-12-100070, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Julius J. Manno was charged with the crime of impeding traffic on a roadway in downtown Austin, Texas. *See* Tex. Transp. Code § 545.363(a) (setting out offense of impeding traffic). After a trial before a jury in the municipal court, the jury found him guilty, and the court imposed a fine and court costs totaling $301.10. Subsequent to the municipal court's determination, Manno filed a motion for a new trial. After considering the merits of the motion, the municipal court denied the motion. Once his motion for new trial was overruled, Manno appealed the municipal court's judgment to the county court at law. After reviewing the briefing by Manno and the State, the county court affirmed the judgment of the municipal court. In a pro se appellate brief listing five appellate issues, Manno contends that the jury charge was improper because it did not include language from all of the subsections of the governing statute, asserts that a recording of the events in question reveals that he was issued a citation for an improper purpose, and challenges the

sufficiency of the evidence supporting his conviction. We will affirm the judgment of the county court at law.

## DISCUSSION

**Jury Charge**

In his first issue on appeal, Manno contends that the jury charge was improper because it only contained language from subsection 545.363(a) of the Transportation Code and did not include language from subsections (b) and (c). *See* Tex. Transp. Code § 545.363. That provision provides, in its entirety, as follows:

> (a) An operator may not drive so slowly as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law.
>
> (b) When the Texas Transportation Commission, the Texas Turnpike Authority, the commissioners court of a county, or the governing body of a municipality, within the jurisdiction of each, as applicable, as specified in Sections 545.353 to 545.357, determines from the results of an engineering and traffic investigation that slow speeds on a part of a highway consistently impede the normal and reasonable movement of traffic, the commission, authority, county commissioners court, or governing body may determine and declare a minimum speed limit on the highway.
>
> (c) If appropriate signs are erected giving notice of a minimum speed limit adopted under this section, an operator may not drive a vehicle more slowly than that limit except as necessary for safe operation or in compliance with law.

*Id.* When presenting this issue, Manno contends that subsections (b) and (c) demonstrate that section 545.363 does not apply to driving performed in a downtown metropolitan area. Furthermore, he asserts that because the municipal court did not include language from subsections (b) and (c) in its charge, he was unable to argue to the jury that section 545.363 did not prohibit his conduct.

2

However, this jury-charge argument was not mentioned in Manno's motion for new trial. To perfect an appeal from a municipal court's judgment, "the appellant must file a written motion for new trial with the municipal clerk" setting "forth the points of error of which the appellant complains." Tex. Gov't Code § 30.00014(c); *see id.* § 30.00014(b) (providing that reviewing court shall determine appeal based on "the errors that are set forth in the appellant's motion for new trial"); *Brooks v. State*, 226 S.W.3d 607, 609 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (explaining that to preserve complaint regarding alleged error made by municipal court, appellant "must raise the identical point in his motion for new trial"). Moreover, if an issue is not raised in a motion for new trial, the issue is not preserved for appellate review. *Brooks*, 226 S.W.3d at 609.

In light of the preceding, it does not appear that Manno preserved this issue for consideration on appeal. Even assuming that the issue was preserved, the record before this Court reveals that Manno did not make any objection to the charge before it was submitted to jury. If no objection is made to a jury charge, courts will only reverse if a jury-charge error "is so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). As explained below, we would be unable to conclude that any alleged jury-charge error constituted egregious harm.

Although Manno correctly points out that the charge only gave an instruction regarding subsection 545.363(a) of the Transportation Code, the other subsections pertain to the establishment of minimum speed limits and to compliance with signs displaying minimum speed limits, *see* Tex. Transp. Code § 545.363, and no evidence was introduced during trial indicating that there was a minimum speed limit for the road at issue, *see* Tex. Code Crim. Proc. art. 36.14

3

(requiring courts to submit to jury "a written charge setting forth the law *applicable to the case*") (emphasis added). Moreover, the charge was consistent with the complaint, which provided that Manno drove "a motor vehicle on a public street . . . so slowly as to impede the normal and reasonable movement of traffic at a time when such reduced speed was not necessary for safe operation or in compliance with law." Finally, we can find no case law consistent with Manno's suggestion that section 545.363 "was meant for higher speed travel on a highway, and certainly not to be used in a downtown condition at night on weekends."

For these reasons, we overrule Manno's first issue on appeal.

**Recording**

In his second issue on appeal, Manno contends that the audio recording that he made of his encounter with Officer Michael Frierson reveals that the officer impermissibly issued him a citation for asking the officer to explain "[w]here in a rule book can I find" the law prohibiting impeding traffic.[1] During the recording, Manno can be heard asking Officer Frierson how his behavior violated the law and where the law prohibiting his conduct could be found. After discussing the matter with Manno for a while, Officer Frierson issued Manno a ticket for impeding traffic. On appeal, Manno insists that Officer Frierson's actions were contrary to Manno's constitutional right to know

---

[1] In his brief, Manno seems to suggest that his recording was not considered during the trial and is not listed as part of the evidence in this case and that these oversights violated his "right to full disclosure of the evidence in this case." *See* Tex. Code Crim. Proc. art. 39.14 (requiring State to make certain disclosures in criminal proceedings). However, the record in this case reveals that the recording was played for the jury at Manno's request, and the recording was filed as an exhibit to the clerk's record in this case.

the nature of the accusations being made against him. *See* U.S. Const. amend. VI (listing accused's rights in criminal prosecutions); Tex. Code Crim. Proc. art. 1.05 (same).

As with his first issue, Manno does not seem to have preserved this issue for appeal because he did not list this issue in his motion for new trial. *See* Tex. Gov't Code § 30.00014(c); *Brooks*, 226 S.W.3d at 609; *see also Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 1158 (2015) (explaining that failure to object may waive even constitutional errors). Moreover, we also note that the audio recording revealed that Officer Frierson explained that he was giving Manno a citation for impeding traffic, that the citation lists impeding traffic as the offense at issue and states that Manno was blocking a lane of traffic, and that the complaint states, as summarized above, that Manno was impeding traffic. *See Huynh v. State*, 901 S.W.2d 480, 481 n.3 (Tex. Crim. App. 1995) (explaining that "complaint serves as the sole charging instrument in municipal court"); *see also State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (providing that constitutional right to notice requires that *charging instrument* be "specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense"). Finally, to the extent that Manno is challenging the sufficiency of the evidence supporting the jury's determination, we address his sufficiency arguments in the next issue.

For all of these reasons, we overrule Manno's second issue on appeal.

**Sufficiency of the Evidence**

In his final three issues on appeal, Manno challenges the sufficiency of the evidence supporting his conviction. Specifically, the entirety of Manno's argument section pertaining to these issues provides as follows:

5

Issue III - Conflict of interest The taxis had a special deal with the W Bldg valet managers to get kickbacks, and the officer Frierson was working for and got paid for by the W Bldg so there was a conflict of interest on the part of Frierson to get rid of me for the Valet managers economic reasons since the Valet managers wanted use of that space for taxis. Also there were no taxi only signs as evidence by state exhibit photo so nothing that says taxis have any special rights over charter vans as I was in at the time. This was discrimination . . .

Issue IV - The verdict was contrary to the law and the evidence, see issues I-III . . .

Issue V - State did not present enough evidence to secure conviction. State only presented a photo in evidence not showing time [of] day of incident . . .

(Ellipses in original).

Under a legal-sufficiency review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make reasonable inferences "from basic facts to ultimate facts." *Id.* Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and defer to that resolution. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

During the trial, Officer Frierson testified regarding his recollections of the events at issue. In his testimony, he explained that he is a police officer and that on the night in question, he

6

was hired by a downtown Austin hotel to keep the peace and make sure that the "driveway kept moving and was fluid" due to an increase in congestion stemming from a concert being held at the hotel. Moreover, Officer Frierson recalled that one of the hotel valets informed him that "there was a vehicle stopped in the roadway in front of the hotel." More specifically, Officer Frierson stated that the vehicle "was parked in Lane Number 1, which is the far left lane," of a public street. Further, he testified that he approached the vehicle and asked why Manno was parked in the road and that Manno replied that he was not a cab driver but was waiting on a dispatch from the company that he worked for. Moreover, Officer Frierson explained that he asked Manno to move his car because his car was causing a backup and was forcing cars to wait and then switch lanes "just to get past him." When describing his encounter with Manno, Officer Frierson related as follows:

> Basically, once I determined that the vehicle should not be there, I asked the driver to move along and clear that lane so that the traffic could proceed around him or proceed without interruption. The driver seemed to hesitate or question the fact that whether or not what I was telling him was lawful. He actually started to pull off, pulled up about a foot, stopped his vehicle, and put it back in park. He wanted to ask me questions about why I was asking him to clear the area.
>
> . . .
>
> I believe I asked him once again to move his vehicle because he was impeding the traffic, and the impression I received was that he was going to comply with that, but he continued to question my lawful order. So, I told him okay, I am just going to deal with it my way, and going to issue a citation because I needed to act decisively, and that he was going to receive a citation.

In addition, Officer Frierson testified that he gave Manno a ticket for impeding traffic.

During cross-examination, Officer Frierson admitted that he received monetary compensation for the work that he did for the hotel. Moreover, Officer Frierson also admitted that

he only noticed Manno parked in the road after being informed by one of the hotel employees. However, Officer Frierson denied that he issued Manno a citation because Manno asked where the law regarding impeding traffic was located; on the contrary, Officer Frierson explained that Manno was cited for impeding traffic after being informed of the violation and refusing to comply with the directive to not park in the roadway.

After Officer Frierson finished testifying, Manno described the events in question. In his testimony, Manno explained that on the night in question he had a chauffeur's permit and urged that chauffeur's permits give drivers the same rights as taxicab drivers. Moreover, he stated that he had been dispatched to the area and was waiting for a client at the time of his interaction with Officer Frierson. Furthermore, he related that although the hotel valets had a problem with him being parked in the roadway, the valets routinely allowed taxicab drivers to park in the road and to block traffic in front of the hotel. In addition, he asserted that there was no traffic at that time of night and that there were three additional lanes that would have allowed any driver on the road to go around him. Next, Manno testified that the valets and Officer Frierson were looking for any excuse to get him out of the area. Furthermore, during cross-examination, Manno admitted that he had been parked in a lane of traffic for several minutes before Officer Frierson approached and that no passengers were unloading from his vehicle, but he insisted that he had the legal right as a chauffeur to sit in a lane of traffic with his flashers on and to wait for customers to come down. Moreover, he insisted that he cannot wait at a different location because his potential hotel customers will just take a taxicab instead.

Following his testimony, Manno played a video recording for the jury that he made of the road in question on a different night and argued that the video shows that taxicabs are allowed

8

to park in the lane for several minutes without any legal consequence. Next, Manno played the audio recording of his conversation with Officer Frierson, which was summarized earlier in the opinion.

In light of the evidence summarized above, of the jury's role in making credibility determinations and resolving conflicts in the evidence, and of our standard of review for legal-sufficiency challenges, we conclude that there is legally sufficient evidence establishing that Manno impeded traffic on the night in question. Accordingly, we overrule his third, fourth, and fifth issues on appeal.

**CONCLUSION**

Having overruled Manno's issues on appeal, we affirm the county court at law's judgment.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed: May 27, 2015

Do Not Publish

9